**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MICHAEL J. STUART, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:11-CV-04251-RWS |
| RESURGENS RISK | : | |
| MANAGEMENT, INC., WILLIE | : | |
| H. BURKS, RONALD D. | : | |
| MCADAMS, and WAYNE | : | |
| YINGLING, | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

This case comes before the Court on Plaintiff's Motion for Partial

Summary Judgment [55] and Defendants' Motion for Summary Judgment [59].

After reviewing the record, the Court enters the following Order.

### Background

This is a case concerning overtime compensation allegedly owed Plaintiff

under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, <u>et</u> <u>seq</u>.  (<u>See</u>

<u>generally</u> Compl., Dkt. [1-1].)  Except where otherwise indicated, the following

facts are undisputed.

AO 72A
(Rev.8/82)

Defendant Resurgens Risk Management, Inc. ("Resurgens") is a Georgia corporation in the business of insurance sales and related services. (Pl.'s Statement of Undisputed Material Facts As To Which No Genuine Issue Remains To Be Tried ("Pl.'s SMF"), Dkt. [55-2] ¶ 1.) Defendant Willie H. Burks ("Burks") is Resurgens's Chief Executive Officer ("CEO") and sole shareholder. (Id. ¶ 4.) Burks has day-to-day operational and supervisory control of Resurgens. (Id. ¶ 5.) He has authority to set compensation and work schedules of Resurgens employees and to hire and fire Resurgens employees, and he has exercised that authority. (Id. ¶ 6.) He has also exercised his authority to enter into contracts on behalf of Resurgens. (Id. ¶ 7.) Everything that happens at Resurgens is Burks's ultimate responsibility. (Id. ¶ 8.)

Defendant Ronald D. McAdams ("McAdams") is Resurgens's President and Chief Operating Officer ("COO") and supervises the company's property and casualty division. (Id. ¶ 9.) Defendant Wayne Yingling ("Yingling") has served as Resurgens's Vice President since June 1, 2010, when he became employed by Resurgens, and he supervises the company's employee benefits division. (Id. ¶ 10; Defs.' Statement Of Undisputed Material Facts In Support Of Their Motion For Summary Judgment ("Defs.' SMF"), Dkt. [59-2] ¶ 40.)

2

McAdams and Yingling have day-to-day operational control over their respective divisions at Resurgens, including setting the compensation of the employees they supervise and the authority to hire and fire employees in their respective divisions.  (Id. ¶ 11.)  McAdams and Yingling also have authority to enter into contracts on behalf of Resurgens.  (Id. ¶ 11.)  Additional facts regarding McAdams and Yingling's roles in the company are stated in the Discussion section, infra.

Plaintiff Michael J. Stuart ("Plaintiff") was employed by Resurgens as an hourly, non-exempt Account Representative/Coordinator in the company's employee benefits division.  (Id. ¶ 14.)  Plaintiff had responsibilities for working on Requests for Proposals ("RFPs") for Resurgens.  (Id. ¶ 17.)  He also assisted Resurgens's local government clients with open insurance enrollments. (Id. ¶ 18.)  Plaintiff represented Fulton County, Georgia in unemployment hearings conducted by the Georgia Department of Labor.  (Id. ¶ 19.)  These hearings occasionally required Plaintiff to work outside the office.  (Id.) Additional facts regarding the conditions of Plaintiff's employment are stated in the Discussion section, infra.

In August 2011, Resurgens downsized by implementing a reduction to its workforce.  (Id. ¶ 22.)  At that time, Burks directed McAdams and Yingling to reduce the size of their respective divisions and to return to Burks with a list of employees from each division to be separated from Resurgens, which they did. (Id. ¶ 23.)  Plaintiff was one of the individuals laid off from Resurgens's employee benefits department.  (Id. ¶ 24.)

Plaintiff initiated this litigation by filing a Complaint, seeking to recover from Defendants "unpaid overtime wages as a result of performing work 'off the clock' for the benefit of Defendants, with their knowledge," pursuant to the FLSA.  (Compl., Dkt. [1-1].)  In Count I of the Complaint, Plaintiff raises a claim for overtime compensation under the FLSA.  (Id. ¶¶ 29-39.)  In Count II, Plaintiff raises a claim for quantum meruit/unjust enrichment, alleging that "[t]o the extent that Plaintiff performed any services for Defendants for which he was not compensated, but which did not result in Plaintiff working more than 40 hours per week, Defendants have been unjustly enriched . . . ."  (Id. ¶¶ 40-42.)

Plaintiff now moves for partial summary judgment, seeking judgment as a matter of law on the following issues: (1) that Defendants Burks, McAdams, and Yingling (the "Individual Defendants") were Plaintiff's "employers" within

4

the meaning of the FLSA; (2) that Defendants are liable under Count I for

unpaid overtime compensation under the FLSA; (3) that Defendants are

therefore also liable for liquidated damages, costs, and attorney's fees under the

FLSA; (4) that Defendants' violation of the FLSA was "willful"; and, finally,

(5) that Defendants violated the FLSA's record-keeping requirements.  (See

generally Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem."),

Dkt. [55-1].)

Defendants also move for summary judgment.  Defendants first seek

dismissal of the Complaint in its entirety on grounds of judicial estoppel, based

on Plaintiff's failure to disclose his claims against Defendants in Plaintiff's

Chapter 13 bankruptcy proceeding, which was proceeding contemporaneously

with this action.  (Defs.' Mot. for Summ. J., Dkt. [59] at 1.)  In the event the

Court declines to dismiss the Complaint on grounds of judicial estoppel,

Defendants move for summary judgment on (1) Plaintiff's Count I claim for

overtime under the FLSA, to the extent any such claim arises after March 21,

2011; (2) Plaintiff's Count II claim for quantum meruit/unjust enrichment in its

entirety; and (3) all claims against Defendants McAdams and Yingling on the

basis that these Defendants are not "employers" subject to the FLSA.  (Id. at 2.)

5

The Court sets out the legal standard governing a motion for summary judgment before considering the parties' motions on the merits.

## Discussion

## I.    Summary Judgment Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257  (1986).

6

The applicable substantive law identifies which facts are material.  Id. at

248.  A fact is not material if a dispute over that fact will not affect the outcome

of the suit under the governing law.  Id.  An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must

view all evidence and draw all reasonable inferences in the light most favorable

to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296

(11th Cir. 2002).  But, the court is bound only to draw those inferences which

are reasonable.  "Where the record taken as a whole could not lead a rational

trier of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations

omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met

its burden under Rule 56(a), the nonmoving party "must do more than simply

show there is some metaphysical doubt as to the material facts").

7

**II.     Defendants' Motion for Summary Judgment [59]**

    <u>A.</u>    <u>Judicial Estoppel</u>

    Defendants seek dismissal of the Complaint in its entirety on grounds of judicial estoppel, arguing that this sanction is warranted in light of Plaintiff's failure to disclose his claims against Defendants in his Chapter 13 bankruptcy proceeding.  (Defs.' Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Mem."), Dkt. [59-1] at 4-13.)

    "Judicial estoppel is an equitable doctrine that precludes a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."  <u>Barger v. City of Cartersville</u>, 348 F.3d 1289, 1293 (11th Cir. 2003) (internal quotes and citation omitted).  "The doctrine exists to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  <u>Id.</u> (internal quotes and citation omitted).  In the Eleventh Circuit, the applicability of the doctrine turns primarily on two factors: "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding.  Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system."  <u>Robinson v. Tyson</u>

8

Foods, Inc., 595 F.3d 1269, 1273 (11th Cir. 2010).  These factors, however, are not exhaustive; "courts must always give due consideration to the circumstances of the particular case."  Id. (citation omitted).

Plaintiff initiated this litigation by filing his Complaint in the Superior Court of Fulton County on November 8, 2011.  (Compl., Dkt. [1-1].)  Plaintiff subsequently filed a petition for Chapter 13 bankruptcy on April 2, 2012. (Decl. of Dean Fuchs ("Fuchs Decl."), Dkt. [71] ¶ 3.)  It is undisputed that Plaintiff failed to disclose his claims against Defendant in his Chapter 13 bankruptcy proceeding, which was proceeding contemporaneously with this litigation.  Thus, it is undisputed that Plaintiff took an inconsistent position in a prior proceeding under oath.  See Robinson, 595 F.3d at 1275 ("[F]ailure to timely amend a Chapter 13 reorganization plan to reflect a pending claim while simultaneously pursuing that claim in another court of law constitutes inconsistent positions under oath." (citing Ajaka v. Brooksamerica Mortgage Corp., 453 F.3d 1339, 1344 (11th Cir. 2006))); Evans v. Potter, No. 1:08-cv-1687-TWT, 2009 WL 529599, at *2 (N.D. Ga. Feb. 27, 2009) ("In the context of Chapter 13 bankruptcies, 'judicial estoppel bars a plaintiff from asserting claims previously undisclosed to the bankruptcy court where the plaintiff both

9

knew about the undisclosed claims and had a motive to conceal them.'"

(quoting De Leon v. Comcar Indus., Inc., 321 F.3d 1289, 1291 (11th Cir.

2003))). The first prong of the judicial estoppel test is satisfied. The issue

therefore becomes one of intent.

As stated above, judicial estoppel will bar Plaintiff's claims in this action

only if Plaintiff's failure to disclose those claims in the bankruptcy proceeding

was "calculated to make a mockery of the judicial system." "For purposes of

judicial estoppel, intent is a purposeful contradiction—not simple error or

inadvertence." Barger, 348 F.3d at 1294. "In considering judicial estoppel for

bankruptcy cases, the debtor's failure to satisfy its statutory disclosure duty is

'inadvertent' only when, in general, the debtor either lacks knowledge of the

undisclosed claims or has no motive for their concealment." Robinson, 595

F.3d at 1275. Moreover, "[w]hile an estopped party's contradiction must be

intentional, such intent may be inferred from the record." Id.

The Eleventh Circuit has cautioned, however, that "[j]udicial estoppel is

intended to be a flexible rule in which courts must take into account all of the

circumstances of each case in making [a] determination." Ajaka, 453 F.3d at

1344 (internal quotes and citation omitted). Indeed, the United States Supreme

Court has noted that there are no "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel.  Additional considerations may inform the doctrine's application in specific factual contexts."  New Hampshire v. Maine, 532 U.S. 742, 751 (2001).  Judicial estoppel is an equitable doctrine, and the decision whether to invoke it is within the court's discretion.  Burnes v. Pemco Auroplex, Inc., 291 F.3d 1282, 1287 (11th Cir. 2002).

Despite the fact the Plaintiff initially failed to disclose his claims against Defendants in his Chapter 13 bankruptcy proceeding, the Court finds judicial estoppel unwarranted in light of the particular facts of this case.  Although the requisite intent to "make a mockery of the judicial system" may be inferred from the record under certain circumstances, the Court finds such inference improper in this case in light of the following evidence.

The Court notes, first, Plaintiff's assertion that he did not intend to conceal the pendency of this action from the bankruptcy court.  (Decl. of Michael J. Stewart ("Pl.'s Decl."), Dkt. [70] ¶ 10.)  Plaintiff explains that on March 31, 2012, he went to his bankruptcy counsel's law office and was assisted with the preparation of his bankruptcy petition by non-lawyer

11

personnel.  (Pl.'s Decl., Dkt. [70] ¶¶ 7-9.)  These individuals questioned

Plaintiff "in rapid-fire succession" and recorded information on a lap-top

computer.  (Id. ¶ 8.)   Plaintiff states that while he does not recall all of the

questions he was asked, "[he] specifically [does] not recall being asked about

whether [he] had any existing claims or lawsuits."  (Id. ¶ 9.)  "To the extent [he]

was asked about claims or lawsuits, [he] must not have understood what [he]

was being asked."  (Id.)  Plaintiff admits that he knew, as of March 31, 2012, of

the pendency of this litigation against Defendants, his former employer and its

principals.  (Id. ¶ 10.)  He states, "Had I been asked about the existence of

pending litigation, or understood that information was being requested, I would

have disclosed the existence of the litigation against my former employer.  At

the time, I did not understand my obligation to disclose, or that I was being

asked to disclose the existence of my law suit [sic] against my former

employer."  (Id.)  Plaintiff's bankruptcy petition was filed on April 2, 2012.

(Id. ¶ 11.)

       This evidence of lack of bad intent is bolstered by the fact that Plaintiff's

counsel in this action, upon discovery of Plaintiff's failure to disclose his claims

against Defendants in the bankruptcy action, acted immediately and persistently

to rectify that omission.  On May 21, 2012, Plaintiff, for the first time, informed his counsel in this litigation, Dean R. Fuchs ("Fuchs"), of the pendency of his bankruptcy petition.  (Id. ¶ 12.)  Fuchs immediately accessed Plaintiff's bankruptcy petition via PACER to ascertain whether his claims in this litigation had been disclosed.  (Decl. of Dean R. Fuchs ("Fuchs Decl."), Dkt. [71] ¶ 4.) Upon discovery that Plaintiff's claims had not been identified in the bankruptcy petition or related schedules, Fuchs immediately faxed a letter to Plaintiff's bankruptcy counsel, informing the latter of the omission and requesting that he amend the bankruptcy petition and schedules to identify the claims against Defendants in this case.  (Id. ¶ 5; see also Fuchs Decl., Ex. A (May 21, 2012 letter from Fuchs to Brain M. Schockley), Dkt. [71] at 6 ("Regrettably, [Plaintiff] did not identify his pending litigating against [Defendants] in Section 4 of his Statement of Financial Affairs, and I request your assistance in the filing of an Amended Statement of Financial Affairs so as to identify the pending litigation.").)  Fuchs followed up with Plaintiff's bankruptcy counsel about the issue on May 25, 2012 and again on June 8, 2012.

The evidence also shows that on May 22, 2012, Plaintiff and Fuchs notified the bankruptcy trustee of Plaintiff's claims against Defendants.  (Pl.'s

13

Decl., Dkt. [70] ¶ 13; Fuchs Decl., Dkt. [71] ¶ 6; Fuchs Decl., Ex. B (May 22,

2012 Letter from Fuchs to Adam M. Goodman), Dkt. [71] at 11 of 20

("Regrettably, [Plaintiff] did not identify his pending litigation against

[Defendants] in Section 4 of his Statement of Financial Affairs, or in Schedule

B reflecting his personal property.  I have requested the assistance of Brian M.

Schockley, Esq., the Debtor's Bankruptcy counsel, to file amended schedule of

assets and an amended Statement of Financial Affairs so as to identify the

pending litigation . . . .").)  Plaintiff's proposed repayment plan in his

bankruptcy proceeding was never confirmed and his debts were never

discharged, as his bankruptcy petition ultimately was dismissed.  (Pl.'s Decl.,

Dkt. [70] ¶ 21.)

In light of the foregoing evidence, the Court finds that estopping Plaintiff

from pursuing his claims in this case would be unduly harsh.  It does not appear

to the Court that Plaintiff's nondisclosure of his claims against Defendants was

"calculated to make a mockery of the judicial system."  Plaintiff avers that he

was unaware or did not understand his obligation to disclose the pendency of

this suit in his bankruptcy petition and that his nondisclosure was therefore

inadvertent.  The evidence shows that upon learning of Plaintiff's failure to

14

disclose this suit, Plaintiff's counsel in this litigation immediately sought to

correct the nondisclosure by contacting Plaintiff's bankruptcy counsel, on

several occasions, and the bankruptcy trustee, directly.  At this time Plaintiff

also informed the bankruptcy trustee of the existence of this litigation.

The Court also notes that Plaintiff gained no advantage from his

nondisclosure because his bankruptcy petition was dismissed without

discharging his debts.  The Eleventh Circuit has declined to apply judicial

estoppel, despite a plaintiff's failure to disclose a claim in her bankruptcy

proceeding, in a case where the bankruptcy court never discharged the

plaintiff's debts.  Strauss v. Rent-A-Center, Inc., 192 F. App'x 821, 823 (11th

Cir. 2006).  The court reasoned, "Strauss was not successful in 'persuading a

tribunal to accept the earlier position, so that judicial acceptance of the

inconsistent position in a later proceeding creates the perception that either

court was misled.'"  Id. (quoting Burnes, 291 F.3d at 1285).  The court

distinguished Barger, the case relied on by Defendants in this case, on grounds

that in Barger, "(1) the debtor intentionally misled the bankruptcy court as to

the existence and then character of her employment lawsuit, and (2) the debtor's

success at concealing the true character of her lawsuit from the bankruptcy

court resulted in a bankruptcy court ordered discharge of all her debts."  Id. (citing Barger, 348 F.3d at 1289).

In sum, for the foregoing reasons, the Court in its discretion declines to estop Plaintiff from pursuing the claims in his Complaint.  Defendants' Motion for Summary Judgment on the basis of judicial estoppel therefore is **DENIED**. The Court now considers Defendants' alternative arguments that certain of Plaintiff's claims fail as a matter of law.

> B.    Count I claims for overtime compensation under the FLSA arising after March 21, 2011

Defendants move for summary judgment on any claim for overtime compensation arising after March 21, 2011.  (Defs.' Mem., Dkt. [59-1] at 14.) In response, Plaintiff states that he is not seeking overtime compensation from Defendants for work performed after that date.[1]  (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n Br."), Dkt. [69] at 13.)  Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** as to any claim for overtime compensation arising after March 21, 2011.

---

[1] Indeed, Plaintiff admits that he was paid for any overtime worked after March 21, 2011.  (Pl.'s Resp. to Defs' SMF, Dkt. [67] ¶ 26.)  Thus, he admits he is not seeking to recover overtime after March 21, 2011 as part of Count I.  (Id. ¶ 27.)

16

C.     Count II claim for quantum meruit/unjust enrichment

Defendants move for summary judgment on Plaintiff's Count II claim for quantum meruit/unjust enrichment in its entirety.  (Defs.' Mem., Dkt. [59] at 14-17.)  Plaintiff has not responded to Defendants' motion with respect to this claim.  (See generally Pl.'s Opp'n Br., Dkt. [69].)

In Count II, Plaintiff seeks to recover for allegedly uncompensated non-overtime work.  Plaintiff alleges, "To the extent that Plaintiff performed any services for Defendants for which he was not compensated, but which did not result in Plaintiff working more than 40 hours per week, Defendants have been unjustly enriched by receiving the benefit of Plaintiff's services at a rate of total compensation below that to which the Plaintiff agreed to work."  (Compl., Dkt. [1-1] ¶ 41.)  Thus, Plaintiff seeks to recover for work performed in weeks when he allegedly was compensated for less than 40 hours of work.  (Defs.' SMF, Dkt. [67] ¶ 29; Pl.'s Resp. to Defs.' SMF, Dkt. [67] ¶ 20.)

The essential elements of a claim for quantum meruit under Georgia law are "(1) the performance of valuable services; (2) accepted by the recipient or at his request; (3) the failure to compensate the provider would be unjust; and (4) the provider expected compensation at the time services were rendered."

17

Amend v. 485 Properties, 627 S.E.2d 565, 567 (Ga. Ct. App. 2006).  Similarly, to prevail on a claim for unjust enrichment, a plaintiff must show that "a benefit [has been] conferred which would result in an unjust enrichment unless compensated." Cochran v. Ogletree, 536 S.E.2d 194, 196 (Ga. Ct. App. 2000). Defendants move for summary judgment on grounds that there is no evidence in the record that Plaintiff was not fully compensated for non-overtime work. (Defs.' Mem., Dkt. [59-1] at 14-17.)  In other words, Defendants contend that Plaintiff has failed to show that it conferred any benefit on Defendants (in the form of non-overtime work) for which it was not compensated.  The Court agrees.

It is undisputed that Plaintiff was paid by Defendant Resurgens every two weeks.  (Pl.'s Resp. to Defs.' SMF, Dkt. [67] ¶ 30.)  The only evidence Plaintiff cites in support of his claim that he was not fully compensated for non-overtime work are payroll records for the periods between July 31, 2011 and August 13, 2011 and August 14, 2011 and August 27, 2011, indicating that Plaintiff was compensated for 79.62 (as opposed to 80) hours of work performed during both of these periods.  (Pl.'s Resp. to Defs.' SMF, Dkt. [67] ¶¶ 33-37; June 6, 2012 Dep. of Yelennis Paez ("Paez Dep."), Ex. 3, Dkt. [65-3] at 37-38 of 40.)

18

Plaintiff, however, has failed to produce any evidence that he, in fact, worked more than 79.62 hours during these two periods and therefore was not compensated for non-overtime work performed.  Accordingly, this evidence does not show that Plaintiff performed work for which he was not compensated. Absent such evidence, the Court agrees with Defendants that Plaintiff's Count II claim fails as a matter of law.  Defendants' Motion for Summary Judgment therefore is **GRANTED** on Count II.

      D.    <u>Claims against Defendants McAdams and Yingling</u>

Finally, Defendants move for summary judgment on Plaintiff's FLSA claims against Defendants McAdams and Yingling, arguing that these Defendants are not "employers" within the meaning of the FLSA and therefore not subject to individual liability thereunder.  (Defs.' Mem., Dkt. [59-1] at 17-21, 22-23.)  The Court considers Defendants' arguments regarding McAdams and Yingling in Part III.C., <u>infra</u>, where it considers Plaintiff's Motion for Summary Judgment on the issue of whether these Defendants were "employers" under the FLSA.

**III.    Plaintiff's Motion for Partial Summary Judgment [55]**

As stated in the Background section, <u>supra</u>, Plaintiff moves for summary judgment on the following claims and issues:  (1) whether the Individual Defendants were Plaintiff's "employers" within the meaning of the FLSA; (2) whether Defendants are liable under Count I for unpaid overtime compensation under the FLSA; (3) whether Defendants, therefore, are also liable for liquidated damages, costs, and attorney's fees under the FLSA; (4) whether Defendants' violation of the FLSA was "willful"; and, finally, (5) whether Defendants violated the FLSA's record-keeping requirements.  The Court considers, first, whether Plaintiff is entitled to judgment as a matter of law on his Count I claim for overtime compensation.  Resolution of this issue may resolve several other issues raised by Plaintiff—namely, whether Defendants are liable for liquidated damages, costs, and attorney's fees under the FLSA and whether their violation of the FLSA (if any) was "willful."  The Court then considers whether the Individual Defendants are "employers" subject to the FLSA.  Finally, the Court considers Plaintiff's claim that Defendants violated the FLSA's record-keeping requirements.

A.      Count I claim for overtime compensation under the FLSA[2]

"Under the FLSA, an employer may not employ his employee for a

workweek longer than forty hours unless his employee receives overtime

compensation at a rate not less than one and a half times his regular rate." Allen

v. Bd. of Pub. Educ., 495 F.3d 1306, 1314 (11th Cir. 2007) (citing 29 U.S.C. §

207(a)(1)).  "A person is employed if he or she is suffered or permitted to

work."  Id. (citing 29 U.S.C. § 203(g)).  "It is not relevant that the employer did

not ask the employee to do the work.  The reason that the employee performed

the work is also not relevant.  If the employer knows or has reason to believe

that the employee continues to work, the additional hours must be counted."  Id.

(internal quotes and citation omitted).

Thus, to prevail on his claim for unpaid overtime compensation under the

FLSA, Plaintiff must prove that he "was suffered or permitted to work without

compensation."  Id. (citing 29 U.S.C. § 201 et seq.).  "Courts have interpreted

this to mean that a FLSA plaintiff must demonstrate that (1) he or she worked

overtime without compensation and (2) the [employer] knew or should have

_____

[2] As stated in Part II.B., supra, Plaintiff's Count I claim for overtime under the
FLSA is limited to overtime hours allegedly worked and uncompensated on or before
March 21, 2011.

21

known of the overtime work."  Id. (citations omitted).  See also 29 C.F.R. §

785.11:

> Work not requested but suffered or permitted to work is work time.
> For example, an employee may voluntarily continue to work at the
> end of the shift.  He may be a pieceworker, he may desire to finish
> an assigned task or he may wish to correct errors, paste work
> tickets, prepare time reports or other records.  The reason is
> immaterial.  The employer knows or has reason to believe that he
> is continuing to work and the time is working time.

The Court considers these two elements in turn.

### 1.    *Performance of overtime work without compensation*

The plaintiff-employee bears the burden of proof on the issue of whether

he or she worked overtime without compensation.  Allen, 495 F.3d at 1314

(citing Anderson v. Mt. Clemens Pottery, Inc., 328 U.S. 680, 687 (1946),

superceded by statute on other grounds).  "The remedial nature of [the FLSA]

and the great public policy which it embodies, however, militate against making

that burden an impossible hurdle for the employee."  Anderson, 328 U.S. at

687.  Indeed, "[i]t is the employer's duty to keep records of the employee's

wages, hours, and other conditions and practices of employment," and it is the

employer "who is in position to know and produce the most probative facts

concerning the nature and amount of work performed."  <u>Allen</u>, 495 F.3d at 1314

(citing <u>Anderson</u>, 328 U.S. at 687).

In cases where the employer has kept proper and accurate records of its

employees' hours, the plaintiff-employee may discharge his or her burden of

proof simply by producing those records.  <u>Anderson</u>, 328 U.S. at 687.  "But

where the employer's records are inaccurate or inadequate and the employee

cannot offer convincing substitutes a more difficult problem arises."  <u>Id.</u>  The

Supreme Court has recognized that in such situations,

> The solution . . . is not to penalize the employee by denying him
> any recovery on the ground that he is unable to prove the precise
> extent of uncompensated work.  Such a result would place a
> premium on an employer's failure to keep proper records in
> conformity with his statutory duty; it would allow the employer to
> keep the benefits of an employee's labors without paying due
> compensation as contemplated by the [FLSA].

<u>Id.</u>  Thus, the Supreme Court has held that in such situations, the plaintiff-

employee discharges his burden "if he proves that he has in fact performed

work for which he was improperly compensated and if he produces sufficient

evidence to show the amount and extent of that work as a matter of just and

reasonable inference."  <u>Id.</u>  "The burden then shifts to the employer to come

forward with evidence of the precise amount of work performed or with

23

evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."  Id. at 687-88.  "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."  Id. at 688.

As a threshold matter, Plaintiff contends that the employment records generated by Defendants do not reflect the number of hours Plaintiff worked.  It is undisputed that prior to July 2010, Resurgens used a time-clock mechanism to record employees' hours, which required employees to "swipe" company-issued identification cards that contained magnetic strips.  (Defs.' Resp. to Pl.'s SMF, Dkt. [66-1] ¶ 48.)  Plaintiff testified, however, that he was instructed by his immediate supervisor at Resurgens, Vice President Roy Callahan, to "swipe-in" at 8:30 a.m. and "swipe-out" at 5:30 p.m., even if Plaintiff continued working after 5:30 p.m.  (Pl.'s SMF, Dkt. [55-2] ¶ 51; Pl.'s Dep., Dkt. [50] at 67:23-68:6.)  Plaintiff testified that the reason given for this instruction was that Resurgens does not pay overtime.  (Pl.'s Dep., Dkt. [50] at 68:24-69:1.)  (Defendants dispute or deny the two foregoing factual assertions.  ("Defs.' Resp. to Pl.'s SMF, Dkt. [66-1] ¶ 51.))  It is undisputed that the records generated from the time-clock system are now illegible and of limited utility.

24

(Defs.' Resp. to Pl.'s SMF, Dkt. [66-1] ¶ 52.)  Defendants contend that this is

due to "errors in the old time clock system outside of Defendants' control."

(Id.)

It is further undisputed that on or about July 26, 2010, Resurgens began

using new timekeeping software called "Qquest," a computerized time clock

used to track employee time.  (Defs.' Resp. to Pl.'s SMF, Dkt. [66-1] ¶ 53.)

Under this system, employees use a user-ID to log into a computer when they

arrive in the morning and log out when they leave.  (Id. ¶ 54.)  Plaintiff

challenges the accuracy of the records generated by the Qquest system.  In

particular, Plaintiff has presented evidence that at some point in time, the

Qquest system was programmed such that it would automatically default to a

maximum of 8.0 hours for each workday, regardless of the number of hours

actually worked on that day.  (E.g., Pl.'s SMF, Dkt. [55-2] ¶¶ 60-67; June 6,

2012 30(b)(6) Dep. of Resurgens Risk Management (Vincent Harris) ("Harris

Dep."), Dkt. [55-13] at 66:9-72:5.)

In addition to challenging the accuracy of the records of Plaintiff's

working time, Plaintiff has presented evidence that he, in fact, worked overtime

25

for which he was not compensated.[3]  It is undisputed that Resurgens's normal

business hours are 8:30 a.m. to 5:30 p.m.  (Defs.' Resp. to Pl.'s SMF, Dkt. [66-

1] ¶ 25.)  Plaintiff testified in his deposition, however, that he often began his

work day before 8:30 a.m. and ended his workday after 5:30 p.m.  (<u>E.g.</u>, June 4,

2012 Dep. of Michael J. Stuart ("Pl.'s Dep."), Dkt. [50] at 112-116; 118:6-14.)

For example, Plaintiff testified that the annual open enrollments for Resurgens's

local government clients occasionally required Plaintiff to begin his work day

before 8:30 a.m. and end after 5:30 p.m. to accommodate the work schedules of

those clients' employees.  (Pl.'s SMF, Dkt. [66-1] ¶ 33; Pl.'s Dep., Dkt. [55] at

136:20-139:9; 142:14-143:9.)  Similarly, when Resurgens had a deadline to

respond to an RFP, Plaintiff testified that he could not leave the office at 5:30

p.m. but had to stay and work into the evening hours until the RFP was

completed.  (Pl.'s SMF, Dkt. [55-2] ¶ 32; Pl.'s Dep., Dkt. [50] at 111:16-

112:14; 114:11-116:13.)

---

[3] The following is not an exhaustive account of the evidence presented by
Plaintiff but is only illustrative.

Defendants, however, have presented evidence that Plaintiff did not work overtime hours for which he was not compensated.[4]  In particular, Defendants dispute Plaintiff's testimony that he often worked before 8:30 a.m. and after 5:30 p.m.  (Defs.' Statement of Additional Material Facts Which Present A Genuine Issue For Trial ("Defs.' Statement of Additional Material Facts" or "Defs.' SAF"), Dkt. [66-2] ¶¶ 1-3.)[5]  Defendants have presented testimony of Burks and Yingling, in addition to the testimony of other employees, that Plaintiff was never seen in the office before 8:30 a.m., after 5:30 p.m., or on the weekends, or regularly was seen leaving the office at 5:30 p.m.  (Id.) Additionally, Defendants have presented evidence that on the limited occasion when Plaintiff would have to work after 5:30 p.m., Resurgens either paid Plaintiff for the resulting overtime or permitted him to take time off in the same week to avoid working overtime.  (Id. ¶¶ 4, 9, 11-12.)  Yingling testified that he never refused to authorize the payment of overtime to Plaintiff after Plaintiff

---

[4] The following is not an exhaustive account of Defendants' evidence but is merely illustrative.

[5] The Court notes that Plaintiff did not file a response to Defendants' Statement of Additional Material Facts.

AO 72A
(Rev.8/82)

indicated that he had worked overtime.  (Defs.' SAF, Dkt. [66-2] ¶ 25; Aug. 29, 2012 Dep. of Wayne Yingling ("Yingling Dep."), Dkt. [66-5] at 43:2-10.)

Viewing the evidence in the record in the light most favorable to Defendants, the non-movants, the Court cannot rule as a matter of law that Plaintiff worked overtime hours for which he was not compensated.  For this reason, Plaintiff is not entitled to summary judgment on his Count I claim for overtime compensation under the FLSA.

2.    *Defendants' knowledge of the overtime work*

In light of the Court's ruling in sub-section 1, <u>supra</u>, finding genuine issues of material fact as to whether Plaintiff worked overtime for which he was not compensated, the Court need not consider the second element of Plaintiff's claim—whether Defendants knew or should have known of Plaintiff's uncompensated overtime work.[6]  Plaintiff's Motion for Summary Judgment on

---

[6] While the Court need not address it, Defendants appear to have presented sufficient evidence to withstand a motion for summary judgment on this issue.  For example, Defendants have presented evidence that Resurgens employees were instructed not to work unapproved overtime and were disciplined for beginning work prior to 8:30 a.m. and continuing to work past 5:30 p.m. without authorization. (Defs.' SAMF, Dkt. [66-2] ¶¶ 26-29, 32.)  Defendants have also presented evidence that Plaintiff was compensated for overtime work when Resurgens was aware of it, and that Resurgens was not aware of any overtime work apart from the work for which Plaintiff was compensated.  (Defs.' Resp. to Pl.'s SMF, Dkt. [66-1] ¶ 47; Defs.' SAMF, Dkt. [66-2] ¶¶ 19-25.)

Count I is **DENIED**.

>    B.    Whether Plaintiff is entitled to liquidated damages, costs, and
>           attorney's fees under the FLSA and whether Defendants' violation
>           of the FLSA was "willful"

In light of the Court's ruling in Part III.A., <u>supra</u>, that genuine issues of

material fact preclude the Court from ruling on Plaintiff's FLSA claim as a

matter of law, the Court cannot find as a matter of law that Plaintiff is entitled

to liquidated damages, costs, or attorney's fees or that Defendants' violation of

the FLSA (if any) was willful.  Accordingly, Plaintiff's Motion for Summary

Judgment on these issues is **DENIED**.

>    C.    Whether the Individual Defendants are "employers" under the
>           FLSA

As stated in the Background section, <u>supra</u>, Plaintiff moves for summary

judgment on the issue of whether the Individual Defendants are "employers"

under the FLSA.  (Pl.'s Mem., Dkt. [55-1] at 19-22.)  Defendants do not dispute

that Burks was Plaintiff's "employer" within the meaning of the FLSA.  (Defs.'

Resp. in Opp'n, Dkt. [66] at 2.)  Accordingly, Plaintiff's Motion for Summary

Judgment is **GRANTED** insofar as the Court finds as a matter of law that

Defendant Burks was Plaintiff's "employer" under the FLSA.  Defendants,

AO 72A
(Rev.8/82)

however, dispute that McAdams and Yingling were Plaintiff's "employers" and cross-move for summary judgment on these issues.  (Defs.' Mem., Dkt. [59-1] at 17-21, 22-23.)

### 1.    *Legal Principles*

Defendants McAdams and Yingling cannot be held personally liable under the FLSA unless they are "employers" within the meaning of the FLSA. Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1159 (11th Cir. 2008) (citing 29 U.S.C. § 207(a)(1)).  The FLSA broadly defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d).  "Whether an individual falls within this definition does not depend on technical or isolated factors but rather on the circumstances of the whole activity."  Perez, 515 F.3d at 1159 (internal quotes and citation omitted).  A plaintiff may simultaneously be an employee of multiple employers.  29 C.F.R. § 791.2.

In determining whether an individual is an employer under the FLSA, the court must examine the facts "in light of the 'economic reality' of the relationship between the parties."  Villarreal v. Woodham, 113 F.3d 202, 205 (11th Cir. 1997) (quoting Goldberg v. Whitaker House Co-op, Inc., 366 U.S.

28, 33 (1961)).  The Eleventh Circuit has provided several factors to consider under the economic-reality test in determining whether a person is an employer under the FLSA: whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.  Id.

In addition to the four-factor test provided by Villarreal, the cases provide several additional guideposts in the determination of employer status under the FLSA.  First, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."  Patel, 803 F.2d at 637-38.  "To be personally liable, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee."  Patel, 803 F.2d at 638 (emphasis added).  Thus, in Patel, the Eleventh Circuit held that the individual defendant, who was the President, director, and principal stockholder of the corporate defendant, was not an "employer" under the FLSA because he did not "have operational control of significant aspects of [the company's] day-

to-day functions, including compensation of employees or other matters in relation to an employee." Id. at 638.  The Court also noted that the relevant inquiry for purposes of individual liability under the FLSA is not the degree of control the individual defendant could have exercised but, rather, the degree of control that actually was exercised.  See Perez, 515 F.3d at 1161 ("While acknowledging that the defendant in Patel could have, if he had chosen, played a greater role in the operations of the company, we focused on the role that he did play in concluding that he 'lacked the operational control necessary for the imposition of liability as an 'employer' under the FLSA.'" (quoting Patel, 803 F.2d at 638).)

Second, employer status under the FLSA is most strongly demonstrated where the individual has control over the policies or conduct that allegedly violates the FLSA.  See Freemon v. Foley, 911 F. Supp. 326, 331 (N.D. Ill. 1995) ("[E]ven if a defendant does not exercise exclusive control over all the day-to-day affairs of the employer, so long as he or she possesses control over the aspect of employment alleged to have been violated, the FLSA will apply to that individual.").  Utilizing these legal principles, the Court considers whether,

32

as a matter of law, McAdams and/or Yingling are "employers" within the meaning of the FLSA.

    2.    *McAdams*

It is undisputed that McAdams is President and COO of Resurgens and the supervisor of the property and casualty division.  It is further undisputed that Plaintiff worked in the employee benefits division, which was supervised by Yingling.  Defendants argue that McAdams is not an "employer" under the FLSA because he did not exercise sufficient control over Plaintiff's employment.  (Defs.' Mem., Dkt. [59-1] at 19.)  In support of this argument, Defendants have presented evidence that McAdams exercised operational control only over the property and casualty department of Resurgens and, therefore, only over the employees of that department.  (Id.)  For example, Yingling testified that while McAdams could exercise authority over the employee benefits department, he did not do so.  (Aug. 29, 2012 Dep. of Wayne Yingling ("Yingling Dep."), Dkt. [59-8] at 25:25-26:1 ("[McAdams] could exercise authority over my department, yes. Did he, no.").)  Defendants have also presented evidence that McAdams was not responsible for setting Plaintiff's work schedule, setting the conditions of Plaintiff's employment,

33

making decisions regarding Plaintiff's compensation, or approving or

authorizing the payment of overtime to Plaintiff.  (Decl. of Ronald McAdams

("McAdams Decl."), Dkt. [59-9] ¶¶ 11-14.)  McAdams declares that he did not

supervise Plaintiff or exercise authority over employees in the employee

benefits department.  (Id. ¶ 9-10.)

Plaintiff argues, on the contrary, that McAdams is an "employer" under

the FLSA because, as President and COO of Resurgens, he had day-to-day

operational control over the company, not just the property and casualty

division.  (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. (Pl.'s Opp'n Br., Dkt.

[69] at 17-18.)  In support of this argument, Plaintiff points to the following

deposition testimony of Vincent Harris, Resurgens's Business Development

Manager:

> Q:    And can we agree, sir, that Mr. Burks has day to day
>       operational control over [Resurgens]?
>
> A:    No, Ron McAdams as president is chief operating officer.
>       Day to day control is his responsibility. [Mr. Burks] is in his
>       office, he's there.  But Ron's responsibility is operations day
>       to day.
>
> Q:    Okay. So let's start with Mr. McAdams, then.  Can we agree
>       Mr. McAdams then has day to day operational control over
>       [Resurgens]?

A:     Yes.

Plaintiff also points to the deposition testimony of Yingling, stating that

McAdams was involved in the day to day operation of the company.  (Pl.'s

Resp. to Defs.' SMF, Dkt. [67] ¶ 41.)  Indeed, Yingling testified as follows:

> Q:     . . . Do you know if Mr. McAdams was ever involved in
>        setting or determining employee schedules?
>
> A:     Yes.
>
> Q:     Does Mr. McAdams have the authority to hire or fire
>        employees?
>
> A:     Yes.
>
> Q:     Have you ever known Mr. McAdams to ever hire or fire
>        employees?
>
> A:     Yes.
>
> Q:     Was that true during the period of time [Plaintiff] was
>        employed by Resurgens?
>
> A:     Yes.
>
> Q:     Does Mr. McAdams have authority to set or determine
>        compensation for Resurgens employees?
>
> A:     Yes.
>
> Q:     Does Mr. McAdams as president of the company have
>        authority to contract with vendors?

35

A:      Yes.

Q:      And have you known him to actually do that?

A:      Yes.

Q:      And did he have that authority and exercise that authority
during the period of time [Plaintiff] was employed there?

A:      Yes.

(Yingling Dep., Dkt. [58] at 26:2-27:3.)

Plaintiff has also presented evidence that McAdams exercised authority

with respect to the conditions of Plaintiff's employment, itself.  Plaintiff

contends that in late July or early August 2009, he spoke with McAdams about

the fact that he and a co-worker had not received a pay raise when everyone else

in the company had.  (Stuart Decl., Dkt. [70] ¶ 23.)  Plaintiff contends that

McAdams promised to "look into it" and "get back to [Plaintiff]" and that, as a

result of the meeting with McAdams, Plaintiff received the pay raise in October

2009.  (Id. ¶¶ 23-224.)  Plaintiff also contends that McAdams was directly

involved in administering quarterly bonus payouts for employees who met

certain sales performance criteria, including Plaintiff.  (Id. ¶ 25.)  Finally,

Plaintiff contends that McAdams made decisions regarding working hours that

36

were applicable to all employees, including Plaintiff—for example, regarding

when hourly employees could leave the office before 5:30 p.m.  (<u>Id.</u> ¶¶ 26-27.)

In light of the conflicting evidence presented above, the Court cannot rule

as a matter of law that McAdams was or was not an "employer" within the

meaning of the FLSA.  In particular, genuine issues of material fact exist as to

whether McAdams had direct responsibility for the supervision of Plaintiff.

Issues of fact also exist regarding the extent of McAdams's control over the

day-to-day operations of the company as a whole, as opposed to merely the

property and casualty division, which he supervised.

For example, although Harris testified that McAdams had day to day

control over the operations of Resurgens, McAdams himself declared that he

only had control over the property and casualty division of the company, in

which Plaintiff did not work.  Moreover, while Yingling testified to

McAdams's authority with respect to hiring and firing employees and setting

their compensation, it is not clear whether this authority is limited to the

property and casualty division or whether it extends to the company as a whole.

Indeed, immediately preceding his testimony regarding this authority, Yingling

testified as follows:

37

Q:     Did McAdams, to your knowledge, ever supervise
       [Plaintiff]?

A:     Not to my knowledge.

Q:     And is that because—is that because he supervised a
       different group or—

A:     Primarily—yeah, my responsibility is employee benefits,
       generally [McAdams]'s is property casualty employees.

(Yingling Dep., Dkt. [58] at 25:14-21.)

As stated in the Background section, <u>supra</u>, it is also undisputed that
Burks, the CEO of Resurgens, has day-to-day operational and supervisory
control over Resurgens.  It is undisputed he has the authority to hire and fire
employees and to set their compensation and work schedules, and that he has
exercised this authority.  The parties agree that everything that happens at
Resurgens is Burks's ultimate responsibility.  (<u>See</u> Background section, <u>supra</u>.)

In light of the conflicting evidence regarding the extent to which
McAdams supervised Plaintiff and/or exercised day-to-day operational control
over Resurgens, the Court cannot rule as a matter of law that McAdams is or is
not an "employer" under the FLSA.  Plaintiff's and Defendants' Motions for
Summary Judgment therefore are **DENIED** with respect to this issue.

38

3.     *Yingling*

It is undisputed that Yingling is Vice President of Resurgens and supervisor of the employee benefits division, the division in which Plaintiff was employed.  It is further undisputed that Yingling had day-to-day operational control over this division, including the authority to set the compensation of employees in the division and to hire or fire those employees.  Indeed, it is undisputed that when Resurgens reduced its workforce, Yingling selected the employees from the employee benefits department who would be terminated, including Plaintiff.

Defendants, nonetheless, argue that Yingling is not an "employer" under the FLSA because his authority was ultimately subject to the superior authority of Burks.  (Defs.' Opp'n Br., Dkt. [66] at 6.)  Defendants point to evidence that Yingling did not have authority to approve overtime hours for Plaintiff without the express approval of Burks, and point out that Yingling does not have an ownership interest in the company.  (Id. at 6 (citing Yingling Dep., Dkt. [58] at 40:8-13, 18:3-5).)  Defendants argue, "In short, even though Yingling had operational control over the department where Plaintiff worked, Yingling did not have final authority with respect to overtime."  (Id.)

39

Even if Burks had ultimate authority with respect to the payment of overtime, Yingling had sufficient responsibility over Plaintiff's employment to qualify as an "employer" under the FLSA.  As stated immediately above, it is undisputed that Yingling had the authority to determine the compensation of employees in the employee benefits division, including Plaintiff, and to hire or fire those employees.  It is undisputed that Yingling decided to terminate Plaintiff when Resurgens downsized.  The evidence also shows that while Yingling may not have had authority to authorize overtime without the approval of Burks, his authorization was required for an employee in his division to work overtime.  (See Yingling Dep., Dkt. [58] at 41:6-10 ("Q: Now, you see the language in bold [in the Resurgens overtime policy] that says your supervisor must approve all overtime?  What does that mean to you?  A: That if one of my employees was going to work overtime that they would have to have my approval.").  This evidence demonstrates that Yingling had sufficient responsibility for the terms and conditions of Plaintiff's employment to constitute an "employer" under the FLSA.  Accordingly, Plaintiff's Motion for Summary Judgment on the issue of whether Yingling is an "employer" under

40

the FLSA is **GRANTED** and Defendants' Motion for Summary Judgment on

the same issue is **DENIED**.[7]

> D.      Whether Defendants violated their FLSA record-keeping
>         obligations

Finally, Plaintiff moves for summary judgment on its claim that

Defendants violated their obligations under the FLSA to "preserve certain

payroll records, including records reflecting the hours worked by each

employee each workday and the total hours worked each workweek for a period

of three years." (Pl.'s Mem., Dkt. [55-1] at 22 (citing 29 C.F.R. §§ 561.2(a)(7),

516.5(a)).) In response, Defendants first argue there is no private right of action

under the FLSA for alleged record-keeping violations. (Defs.' Opp'n Br., Dkt.

[66] at 22-23.) Defendants also contend that Plaintiff has failed to show, as a

matter of law, that such violations occurred. (Id. at 23-24.)

The Court agrees with Defendants that no private right of action exists

under the FLSA for alleged record-keeping violations. See, e.g., Contreras v.

Lara's Trucks, Inc., No. 1:12-cv-85-TWT, 2013 WL 163648, at *3 (N.D. Ga.

---

[7] As Defendants argue, however, Plaintiff's claim for unpaid overtime compensation against Yingling is limited to overtime hours worked (if any) on or after June 1, 2010, the date Yingling began his employment with Resurgens. (Defs.' Mem., Dkt. [59-1] at 22.)

41

Jan. 14, 2013) ("If the Plaintiff intends to assert a violation of the FLSA's

record keeping requirement as a separate cause of action, this claim fails

because there is no private right of action to enforce this provision." (citing

cases)); <u>Helmert v. Butterball</u>, 805 F. Supp. 2d 655, 668 n.15 (E.D. Ark. 2011)

("Even if [the defendant] were in violation of the FLSA's recording

requirement for failing to record actual hours worked, the plaintiffs would not

be entitled to damages because the FLSA does not provide a private cause of

action for violations of the recording requirements." (citing 29 U.S.C. §§

211(c), 216(b)).)  Accordingly, Plaintiff's Motion for Summary Judgment is

**DENIED** as to this claim.

### Conclusion

In accordance with the foregoing, Defendant's Motion for Summary

Judgment [59] is **GRANTED in part** and **DENIED in part**.  It is **GRANTED**

with respect to any Count I claim for overtime compensation arising after

March 21, 2011 and as to Plaintiff's Count II claim for quantum meruit/unjust

enrichment in its entirety.  It is **DENIED** with respect to Defendants' assertion

that Defendants McAdams and Yingling are not "employers" under the FLSA.

AO 72A
(Rev.8/82)

Plaintiff's Motion for Partial Summary Judgment [55] is **GRANTED in part** and **DENIED in part**.  It is **GRANTED** on Plaintiff's claim that Defendants Burks and Yingling are "employers" under the FLSA.  It is **DENIED**, however, with respect to Plaintiff's claim that Defendant McAdams is an "employer" under the FLSA.  It is also **DENIED** with respect to Plaintiff's Count I claim for overtime compensation, liquidated damages, costs, and attorney's fees under the FLSA, and with respect to Plaintiff's assertion that Defendants' violation of the FLSA was "willful."  Finally, it is **DENIED** with respect to Plaintiff's claim that Defendants violated the record-keeping provisions of the FLSA.

**SO ORDERED**, this  _12th_  day of June, 2013.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

43